THOMAS J. GILDEA *vs.* COMMISSIONER OF CORRECTION
& others.

Suffolk.    February 6, 1957. — May 8, 1957.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, &
WHITTEMORE, JJ.

*Imprisonment. Parole.*

A purported determination by the parole board in 1956 that certain
good conduct deductions previously credited to a prisoner while on
parole be forfeited for violation of parole was a nullity by reason of
the elimination of the authority for such a forfeiture from G. L. (Ter.
Ed.) c. 127, § 129, in the revision thereof by St. 1955, c. 770, § 66,
effective on October 20, 1955. [50–51]

A prisoner was not entitled under G. L. (Ter. Ed.) c. 127, § 129, as ap-
pearing in St. 1948, c. 450, § 1, as amended by St. 1954, c. 567, § 4,
to good conduct deductions credited to him while on parole where he
was returned to prison for violation of the parole. [51]

BILL IN EQUITY, filed in the Supreme Judicial Court for
the county of Suffolk on August 27, 1956.

The case was reserved and reported by *Williams, J.*

*John M. Reed,* (*Alette Reed* with him,) for the plaintiff.

*Arnold H. Salisbury,* Assistant Attorney General, (*Fred
L. True,* Assistant Attorney General, with him,) for the
defendant.

WILLIAMS, J.    This is a bill in equity filed on August 27,
1956, by a prisoner in Massachusetts Correctional Institu-
tion, Walpole, formerly called the State prison, under G. L.
(Ter. Ed.) c. 231A, praying that "§ 129 of c. 127 of the
General Laws as it is now and has been in effect be construed
in its application to . . . [the plaintiff], particularly with
respect" to a forfeiture by the parole board in January,
1956, of certain good conduct credits accumulated by the
plaintiff before October 20, 1955. The commissioner of cor-
rection and the members of the parole board are joined as
defendants.

The case is before us on reservation and report by a single justice without decision, upon the pleadings and a stipulation by the parties filed on December 10, 1956, respecting computations by the parole board of deductions credited to the plaintiff on its records. By a second stipulation dated February 5, 1957, submitted at the time of oral argument, it appears that the plaintiff was released on parole on January 31, 1957, and because of that parole certain changes were made in the board's computations of credits.

It is agreed that on June 9, 1932, the plaintiff was sentenced to four consecutive terms of imprisonment of from five to eight years; that on May 7, 1935, he escaped from prison and was returned on May 9, 1935; that on June 8, 1944, he was paroled and was returned to prison on January 1, 1948, pursuant to a revoke warrant issued on October 27, 1947; and that on June 30, 1948, he was again paroled and returned to prison on July 29, 1955, pursuant to a revoke warrant issued on November 18, 1953. The revoke warrants were issued for violations of the conditions of his paroles.

From the computations of the board, which are agreed to be mathematically correct, it appears that at the time the sentences aggregating a maximum of thirty-two years were imposed the plaintiff's discharge date was reckoned to be June 8, 1964. Thereafter he was debited with so called "lost" time amounting to six hundred ninety-two days which resulted from his escape and violations of parole. The addition of this "lost" time to the original terms of sentence deferred the prospective date of discharge to May 1, 1966.

The maximum term which the plaintiff was required to serve was subject to reduction by deductions or credits authorized by statute for faithful observance of prison rules and for satisfactory performance of assigned work, the rights to which were essential elements of the sentences. *Opinion of the Justices,* 13 Gray, 618. *Lembersky* v. *Parole Board of the Department of Correction,* 332 Mass. 290, 294. Previous to October 20, 1955, under G. L. (Ter. Ed.) c. 127, § 129,

as appearing in St. 1948, c. 450, § 1, as amended by St. 1954, c. 567, § 4, the plaintiff while confined was entitled to earn a deduction of six days each month for good conduct and of four days each month for satisfactory work. While on parole if he faithfully observed all the rules of his parole and was not returned to prison for the violation of his parole he was also entitled to deductions for good conduct determined in the same manner as if he had not been released on parole, but not to deductions for satisfactory work. If he was returned to prison for violation of his parole the parole board was authorized to determine what part, if any, of his previous good conduct credits should be forfeited as a result of such violation except that there could be no forfeiture of credits for satisfactory work. Section 129 was revised by St. 1955, c. 770, § 66, which became effective on October 20, 1955, to provide for future good conduct deductions of twelve and one half days in each month. The amending statute eliminated deductions for satisfactory work and contained no provision for forfeiture of previous good conduct credits because of violation of parole. By § 121A of c. 770 it was provided that "good conduct and good work credits accumulated" before the effective date of the act should "continue to be credited at the rate in effect prior to the passage of this act."

In January, 1956, the parole board purported to forfeit good conduct deductions previously credited to the plaintiff while on parole amounting to six hundred thirty days and determined November 3, 1957, as the date of the plaintiff's prospective discharge. From the stipulation of February 5, 1957, it appears that by reason of the plaintiff's parole on January 31, 1957, the date of his prospective discharge has now been determined to be July 13, 1959.

The plaintiff contends that the forfeiture of six hundred thirty days was improper and that from the computation of the parole board he was entitled to a discharge on February 12, 1956. The immediate controversy is over the legality of the forfeiture and its effect on the time when the plaintiff will be entitled to a certificate of discharge. The

Attorney General rightly concedes that the forfeiture was unauthorized because, when made, the power to forfeit prior good conduct credits for violation of parole was no longer granted by the statute. The attempted forfeiture was therefore a nullity and did not affect the good conduct deductions which it purported to cancel. If those deductions were originally properly credited to the plaintiff, he would, according to the computation of the parole board, have been entitled to a discharge in February, 1956. But in our opinion they were not properly credited. While "[d]eductions for good behavior provided by a statute are a part of the sentence imposed by the court and a lessening of the term due a prisoner for good behavior must be recognized and granted" (*Lembersky* v. *Parole Board of the Department of Correction*, 332 Mass. 290, 294) the deductions in question were not authorized. Section 129 as it read prior to the 1955 revision provided for good conduct deductions in the case of a prisoner on parole "who has faithfully observed all the rules of his parole, and has not been returned to prison for the violation of his parole." It is plain that the plaintiff was not such a prisoner, as in each instance where he was credited with deductions while on parole he had been returned to prison because of its violation.

In view of the erroneous computation by the parole board and the uncertainty as to the amount of the deductions which the plaintiff may earn in the future we cannot determine when the plaintiff will be entitled to a certificate of discharge. A final decree is to be entered declaring that the deductions to which the plaintiff was legally entitled were not affected by the forfeiture.

*So ordered.*