Ronald GREENFIELD, Petitioner,

v.

Palmer C. SCAFATI, Superintendent, Massachusetts Correctional Institution, Walpole, Respondent.

Civ. A. No. 67–742–G.

United States District Court
D. Massachusetts.

Dec. 8, 1967.

Michael R. Pizziferri, Boston, Mass., for plaintiff.

Willie J. Davis, Asst. Atty. Gen., Boston, Mass., for defendants.

ALDRICH, Circuit Judge, and CAFFREY and GARRITY, District Judges.

ALDRICH, Circuit Judge.

Petitioner, a Massachuetts prisoner, seeks an injunction against the enforcement of a sentence under a state statute, Mass.Gen.Laws, ch. 127, § 129, as amended by Mass.Acts of 1965, ch. 884, on the ground that the amendment is unconstitutional as an ex post facto law. Pursuant to 28 U.S.C. § 2281 a three-judge district court was convened to consider the merits of his contention. We delayed our hearing briefly until a proceeding brought by petitioner in the state court has been determined adversely by a single justice of the Supreme Judicial Court. The single justice denied bail. We agree with petitioner that we should delay no further.[1] See Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (Dec. 5, 1967). Our first step was to grant bail, upon a stipulation that this release shall not affect the number of days eventually to be served by petitioner if he fails herein.

In 1962 petitioner was sentenced to a 5–7 year term by the Massachusetts Superior Court. Under section 129 of chapter 127 as then existing he was entitled to earn "good-conduct" deductions from the sentence imposed throughout the period of his incarceration. The Massachusetts practice, as testified to before us, is to compute at the time a prisoner

---

1. We also agree with petitioner that the decision of the single justice accorded with the opinion of the full bench in a previous case, Allen v. Massachusetts Parole Board, Mass.1967, 226 N.E.2d 257, except that Allen was a decision which granted the writ and did not resolve a constitutional issue.

commences service of sentence the total deductions which he may so earn and to deduct these from the maximum sentence, thus establishing at the outset a tentative date of release. Should the prisoner, through misbehavior, fail to earn any of the time already deducted, it is "forfeited" by an appropriate extension of the tentative date of release. Broad provision for forfeiture for misconduct during confinement is contained in the statute, but prior to ch. 884 no forfeiture was provided for violation of parole. Gildea v. Commissioner of Correction, 1957, 336 Mass. 48, 142 N.E.2d 400. The availability of good conduct deductions is considered an essential element of the sentence. Murphy v. Commonwealth, 1899, 172 Mass. 264, 52 N.E. 505, 43 L.R.A. 154; Gildea v. Commissioner of Correction, supra.

By ch. 884 of the Acts of 1965 there was added to section 129 the following qualification:

> "A prisoner released on parole by the parole board, who has failed to observe all the rules of his parole and has been returned to a correctional institution for the violation of his parole, shall not receive deductions described in this section for any of the first six months after he is returned to the correctional institution."

Apparently recognizing that there might be objections to retrospective application, the legislature made the provision prospective to the extent that it was not to apply to persons currently on parole. It did, otherwise, apply to persons already under sentence. Petitioner, though sentenced before, was paroled after the amendment took effect, and upon his violation of parole and return to prison the statute was invoked. Consequently, whereas under the old statute it is conceded that petitioner, whose conduct since reincarceration has been good, would have been entitled to release prior to the bringing of this action, under the ch. 884 six months' disqualification his release

is considerably delayed.[2] He contends that application of ch. 884 to him is constitutionally impermissible.

The Supreme Court has long construed Article I, section 10 of the Constitution to forbid the imposition of a sentence, by virtue of a change in the law, greater than the maximum sentence permitted at the date of the offense. Calder v. Bull, 1798, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648; Cummings v. State of Missouri, 1866, 71 U.S. (4 Wall.) 277, 18 L.Ed. 356; Lindsey v. State of Washington, 1937, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182. In fact, the Court has declared that "any law which was passed after the commission of the offense for which the party is being tried * * * which alters the situation of the accused to his disadvantage; * * *" is invalid as ex post facto. In re Medley, 1890, 134 U.S. 160, 171, 10 S.Ct. 384, 387, 33 L.Ed. 835; cf. Rooney v. State of North Dakota, 1905, 196 U.S. 319, 25 S.Ct. 264, 49 L.Ed. 494. Accordingly, statutory reduction, after incarceration, of the amount of good conduct allowance which can be earned has been invalidated. Murphy v. Commonwealth, supra. "Depriving one of time off to which he was justly entitled as a practical matter results in extending his sentence and increasing his punishment." Lembersky v. Parole Board, 1955, 332 Mass. 290, 294, 124 N. E.2d 521, 524. Since, concededly, the application of ch. 884 to petitioner has forever deprived him of the monthly allowances achievable in the first six months of his reconfinement, the question is whether this increase in sentence is constitutional because it was attached to parole.

■ The application of ch. 884 to persons sentenced for a crime committed after its effective date could raise no question. The possibility of a partial forfeiture of the right to earn deductions would have been contemplated in the sentence, and would therefore be within the maximum term provided for. Van Bus-

2. At the hearing before us a controversy developed as to how long, under the rule announced in the final paragraph of Al-

len, fn. 1, supra, the delay should be. We need not consider this question.

kirk v. Wilkinson, 9 Cir., 1954, 216 F.2d 735; Woods v. Steiner, D.Md., 1962, 207 F.Supp. 945, 949–950. The Commonwealth urges that it is also appropriate to apply the statute to one paroled after its enactment because acceptance of parole is a voluntary act. In other words, if a prisoner did not want to risk the penalty for violation, he need not take the parole offered. See Woods v. Steiner, supra, at 951.

■ The Commonwealth's argument must presuppose that parole is not like the good conduct deduction, but may be lawfully withdrawn altogether. It is true that parole is commonly spoken of as a matter of grace, and not of right. E. g., Cox v. Maxwell, 6 Cir., 1966, 366 F.2d 765; Curtis v. Bennett, 8 Cir., 1965, 351 F.2d 931; Woods v. Steiner, supra. It would be more accurate, however, to say that a prisoner's entitlement to parole lies in the discretion of the parole board. It would not follow because a prisoner might not receive parole that it would not be an unlawful ex post facto burden to deprive him altogether of the right to be found qualified. Rather, we see no distinction between depriving a prisoner of the right to earn good conduct deductions and the right to qualify for, and hence earn, parole. Each, to quote In re Medley, supra, materially "alters the situation of the accused to his disadvantage." State ex rel. Woodward v. Board of Parole, 1924, 155 La. 699, 99 So. 534.

The same must be said as between providing unqualified parole and parole cum onere, i. e., subject to ch. 884. The difference between no penalty, other than a termination of the parole, and a substantial increase in imprisonment for violation, is far from inconsequential. To effect this by legislation enacted after the offense for which sentence was imposed cannot be constitutionally supported.

Petitioner is entitled to an order enjoining the forfeiture or suspension of good conduct deductions as provided for by Mass.Acts of 1965, ch. 884, and requiring his present discharge.